UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
____

TERRANCE TERRELL MOORE,

        Plaintiff,                     Case No. 1:20-cv-1184

v.                                          Honorable Janet T. Neff

HEIDI E. WASHINGTON et al.,

        Defendants.
_____/

**OPINION**

        This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

**Discussion**

I.    **Factual allegations**

        Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Lakeland Correctional Facility (LCF) in Coldwater, Branch County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues MDOC Director

Heidi E. Washington, Charles Egeler Reception & Guidance Center (RGC) Accounting Assistant T. Parr, RGC Accounting Supervisor S. Conroy, LCF Warden Bryan Morrison, LCF Business Managers Christine Bolden, and LCF employee S. Middlestadt.

Plaintiff alleges that the stimulus check that he received pursuant to the CARES Act was improperly taken by Defendants. Plaintiff contends that Defendants convinced him to file for stimulus relief, but then took the money to pay his debt. Plaintiff states that this taking violated the purpose of the CARES Act and deprived him of money for medical co-pays, hygiene products, clothing, over-the-counter medications, stamps, pens, pencils, paper, and supplemental food. Plaintiff seeks the return of $600, which was the amount of his stimulus check. Plaintiff further states that equity requires the return of the money "in its totality or split its differences because all have suffered Government and the People." (ECF No. 1, PageID.5.)

II.     **Failure to state a claim**

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at

678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

III. **Fourteenth Amendment**

To the extent that Plaintiff is asserting a violation of his Fourteenth Amendment due process rights, his claim is properly dismissed. The elements of a procedural due process claim are (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006).

In all cases where a person stands to be deprived of his life, liberty or property, he is entitled to due process of law. This due process of law gives the person the opportunity to convince an unbiased decision maker that, for example, he has been wrongly or falsely accused or that the evidence against him is false. The Due Process Clause does not guarantee that the procedure will produce a correct decision. "It must be remembered that even if a state decision

does deprive an individual of life, [liberty], or property, and even if that decision is erroneous, it does not necessarily follow that the decision violated that individual's right to due process." *Martinez v. California*, 444 U.S. 277, 284, n.9 (1980). "[T]he deprivation by state action of a constitutionally protected interest in 'life, liberty or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (emphasis in original). Further, an inmate has no right to counsel in disciplinary proceedings. *Wolff v. McDonnell*, 418 U.S. 539, 569–70 (1974); *Franklin v. Aycock*, 795 F.2d 1253, 1263 (6th Cir. 1986).

Plaintiff fails to allege any specific facts regarding the taking of his stimulus funds. However, MDOC policy regarding the removal of funds from prisoner trust accounts provides:

> T. A fact-finding hearing shall be conducted pursuant to Administrative Rule 791.3310 by a facility hearing officer before funds are removed from a prisoner's trust account, except when due to one or more of the following:
>
> 1. A court order requiring the Department to remove the funds from the prisoner's account.
> 2. The prisoner's written request.
> 3. An order to pay restitution issued by a hearing officer for major or minor misconduct.
> 4. To make an administrative correction to the account (e.g., to remove funds credited to wrong account or in wrong amount; to reverse a credit for a check or money order found to be uncollectible) provided written notice is provided to the prisoner.
>
> U. Prior to the hearing, a Notice of Intent to Conduct an Administrative Hearing (CSJ-282) shall be completed and promptly sent to the prisoner; the hearing shall not be conducted by the person who issued the Notice. The Notice shall specify the reason the funds are to be removed from the account. If a Notice is written, a hold may be placed on the funds which are the subject of the hearing. The facility hearing officer shall record relevant statements by the prisoner on an Administrative Hearing Report, along with the hearing officer's findings. If the hearing officer does not order that the funds be removed from the prisoner's account, any hold placed on the funds which were the subject of the hearing shall be removed. If the hearing officer orders that funds be removed, the funds shall be removed as set forth in Paragraphs V and W.

V. Funds shall be removed from a prisoner's trust account under the following priority, unless otherwise specifically ordered by a court:

1. To make an administrative correction to the account (e.g., to remove funds credited to wrong account or in wrong amount; to reverse a credit for a check or money order found to be uncollectible).

2. Payment of victim restitution as set forth in PD 04.02.107 "Collection of Victim Restitution/Court- Ordered Payments".

3. Payment of child support ordered by a court. Funds shall be removed <u>only</u> if the court orders the Department to remove the funds using State Court Administrative Office (SCAO) approved form FOC 112 unless otherwise directed by the Administrator of the Office of Legal Affairs or designee. If an "Order of Income Withholding" is received directing the Department to remove funds, it shall be returned requesting that the appropriate order be provided instead. If there is more than one order of support, the funds shall be divided equally between or among the required payments.

4. Payment of fees or costs pursuant to a court order directing the Department to remove the funds or pursuant to PD 04.02.107 "Collection of Victim Restitution/Court-Ordered Payments", or the Prison Reimbursement Act. The Administrator of the Office of Legal Affairs or designee shall be notified if a court order for collection of <u>criminal</u> fees or costs is received that is not based on SCAO approved form MC 288, unless otherwise directed by the Administrator or designee. If there is more than one court order for payment of filing fees and costs, payments shall be applied in chronological order based on the date the court order was received in the appropriate business office.

5. Payment of fees for medical services assessed pursuant to PD 03.04.101 "Prisoner Health Care Copayment", in chronological order.

6. Payment of all other institutional debts, including debts to the PBF, in chronological order.

W. All new funds received by a prisoner shall be used to satisfy his/her debts as outlined in this policy except under the following circumstances or as otherwise specifically ordered by a court:

1. It would leave the prisoner with less than $10 available during the month for personal use, based on the prisoner's monthly beginning spendable balance plus new funds received during the month. This includes if funds are being removed pursuant to a court order, unless the order specifically requires otherwise.

2. The funds were loaned or advanced to the prisoner by the Department (e.g., parole loan).

3. The funds are proceeds from savings bonds cashed by the prisoner through the institution provided the proceeds are received directly from the processing bank (e.g., Federal Reserve Bank of Chicago - Lower Peninsula; Federal Reserve Bank of Minneapolis - Upper Peninsula).

4. The funds were sent specifically for "release planning" or for payment of medical or education expenses. Funds designated for medical or education expenses, however, shall first be used to satisfy any medical or education debts, as applicable; a signed disbursement is not required in such cases. Designated funds shall be used only for the purpose for which they were designated after first satisfying any court-ordered payments (e.g., filing fees and/or costs, victim restitution, the Prison Reimbursement Act). Unused designated funds may be returned by the prisoner only to the source of the funds.

5. A total of 50% of funds received in excess of $50 per month shall be removed for payment of restitution as set forth in PD 04.02.107 "Collection of Victim Restitution/Court-Ordered Payments"; this is the maximum to be collected each month for payment of restitution even if multiple restitution orders are received.

6. 50% of funds received in excess of $50 per month shall be removed for payment of <u>criminal</u> fees and costs per each court order received requiring the Department to remove funds to make such payments, unless otherwise directed by the Administrator of the Office of Legal Affairs or designee and consistent with PD 04.02.107.

7. A total of 50% of funds received in excess of $50 per month shall be removed for payment of child support obligations ordered to be collected by the court, consistent with PD 04.02.107; this is the maximum to be collected each month for payment of child support obligations even if multiple child support orders are received.

8. Whenever a prisoner is assessed a fee for medical services pursuant to PD 03.04.101 "Prisoner Health Care Copayment" or incurs another institutional debt, including a debt to the PBF, 100% of the prisoner's positive account balance shall be collected initially even if this would leave the prisoner with less than $10 available during the month for other personal use. Collection on the remaining debt shall be limited to 50% of future funds received for credit to the account unless the prisoner agrees in writing to a larger amount.

MDOC Policy Directive 04.02.105, ¶¶ T, U, V, and W (eff. date 01/01/10).

A review of the policy directive clearly shows that it provides all the process due to a prisoner prior to the removal of funds from his or her prison account. Therefore, to the extent that Plaintiff's stimulus funds were taken pursuant to policy, he fails to state a due process claim.

In addition, if Plaintiff is asserting that Defendants violated policy in taking his funds, Plaintiff's due process claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivations of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479–80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not and cannot meet his burden under *Parratt*. Plaintiff has not alleged that state post-deprivation remedies are inadequate. The Sixth Circuit has found that Michigan law provides "several adequate post-deprivation remedies" to a prisoner asserting improper removal of money from his prison account. *Copeland*, 57 F.3d at 480. In a number of cases similar to this one, the Sixth Circuit has affirmed dismissal where the inmate failed to allege and show that state law post-deprivation remedies were inadequate. *Id.* at 479–80 (money wrongly removed

from prison account); *Lillie v. McGraw*, No. 97-3359, 1997 WL 778050, at *1 (6th Cir. Dec. 12, 1997) (officials allegedly broke television); *Mowatt v. Miller*, No. 92-1204, 1993 WL 27460, at *1 (6th Cir. Feb. 5, 1993) (misapplication of money to a deficit in prison account); *Shabazz v. Lecureux*, No. 85-2014, 1986 WL 16140, at *1 (6th Cir. Dec. 5, 1986) (illegal appropriation of money from prisoner account). Accordingly, the court will dismiss Plaintiff's due process claim.

IV. **Eighth Amendment**

Plaintiff attaches an affidavit asserting that Defendants handling of the COVID-19 pandemic was ineffective and exposed him to stress and the danger of being infected and/or reinfected. (ECF No. 1-2, PageID.12.) Plaintiff states that these conditions violated his rights under the Eighth Amendment.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

In order for a prisoner to prevail on an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted

8

with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims)).  The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37.  To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837.  "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842.  "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836.  "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

Plaintiff claims that he has suffered from anxiety, increased headaches, and permanent scarring since being exposed to COVID-19.  Plaintiff states that Defendants have prioritized security over protecting prisoners from COVID-19 and have "conspired the procedure to disallow directives comported to law that violated [Plaintiff's] liberty to life." (ECF No. 1-2, PageID.12.)  Plaintiff contends that Defendants at LCF were negligent in housing COVID-19 negative prisoners with COVID-19 positive prisoners, without regard to the risk.  Plaintiff states that keeping prisoners in a dangerous environment where they might contract COVID-19 is like adding an additional punishment to the sentence they are serving.

9

Despite Plaintiff's conclusory assertions of harm, he fails to allege any specific facts showing that the named Defendants in this case acted with the requisite deliberate indifference to a substantial risk of serious harm to Plaintiff. In fact, Plaintiff fails to specifically mention any of the Defendants by name in the body of his complaint. As noted above, Plaintiff is suing MDOC Director Washington, RGC Accounting Assistant Parr, and RGC Accounting Supervisor Conroy, none of whom are employed at LCF where Plaintiff is incarcerated. The other Defendants include LCF Warden Morrison, LCF Business Manager Bolden, and LCF employee S. Middlestadt, but Plaintiff fails to allege any specific wrongdoing on their part. Nor does Plaintiff allege specific incidents showing that he was harmed by Defendants conduct, or even whether he was actually infected with COVID-19, or merely suffered from fear of becoming infected. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555.

The Court further notes that Plaintiff's affidavit asserts that prison officials were negligent in their handling of COVID-19. Allegations of negligence fall short of the deliberate indifference required to state an Eighth Amendment claim. *See Farmer*, 511 U.S. at 835 (holding that an Eighth Amendment violation requires a "state of mind more blameworthy than negligence"). Because Plaintiff has failed to allege sufficient facts to support an Eighth Amendment claim, his complaint is properly dismissed.

V.     **Pending motion**

Plaintiff has filed a motion requesting the Court waive any and all filing fees (ECF No. 3). Plaintiff has since been granted leave to proceed *in forma pauperis* in this case (ECF No. 5). Therefore, Plaintiff's motion to waive fees is properly denied as moot.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated:   February 11, 2021                    /s/ Janet T. Neff
                                              Janet T. Neff
                                              United States District Judge